**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JADA DAVIS-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-00213-JAR |
| | ) | |
| BELLEFONTAINE NEIGHBORS | ) | |
| POLICE DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of self-represented litigant Jada Davis-Bey for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 14). Having reviewed the motion, the Court finds that it should be granted. Additionally, for the reasons discussed below, the Court will dismiss plaintiff's amended complaint for failure to state a claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who filed a civil action with this Court on February 6, 2020. (Docket No. 1). The original complaint named fourteen separate defendants. Along with the complaint, plaintiff filed a motion for leave to proceed in forma pauperis and a motion for appointment of counsel. (Docket No. 2; Docket No. 3). The motion for leave to proceed in forma pauperis was on a Court-provided form, but plaintiff answered all the required financial questions with the phrase: "Private Information." The motion for appointment of counsel was also on a Court

2

form. However, the form had been altered to read: "[Plaintiff] hereby reserve[s] the right to appoint my own consul." Both motions were signed, and both included a red fingerprint.

On February 18, 2020, plaintiff submitted a number of exhibits, including medical records, a rental agreement from Grand Slam Storage Center, and a lengthy document titled "Unified United States Common Law Grand Jury," which purported to be a writ of mandamus directed at all county sheriffs. (Docket No. 5).

Subsequently, plaintiff filed four separate documents with the Court on March 9, 2020. First, there was a civil complaint form titled "Amended Claim." (Docket No. 7). This appeared to be the same document filed as Docket No. 1, with the exception that on the caption page, plaintiff had written "Amended Claim" and scratched out the word "Complaint," replacing it with "Claim." Second, there was another motion to appoint counsel on a Court-provided form. (Docket No. 8). Once again, plaintiff had altered the form motion so that it read: "[Plaintiff] hereby reserve[s] the right to appoint my own consul." Plaintiff also filed a second motion for leave to proceed in forma pauperis. (Docket No. 9). As before, plaintiff responded to all the financial questions by writing "Private Information." Finally, plaintiff sent in another packet of exhibits, including a Grand Slam Storage Center rental agreement, a Bellefontaine Neighbors Police Department Incident Report, and handwritten notes. (Docket No. 10).

On July 23, 2020, the Court denied plaintiff's motions for leave to proceed in forma pauperis because plaintiff had not provided any of the financial information required to determine indigency. (Docket No. 12). The Court further determined that plaintiff's complaint was subject to dismissal because she had not provided "a short and plain statement of the claim showing" that she was entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Since plaintiff was a self-represented litigant, the Court gave her the opportunity to file an amended complaint, and provided instructions on how

3

to do so. The Court also directed plaintiff to either file an appropriate motion for leave to proceed in forma pauperis, or to pay the required filing fee. Plaintiff was given thirty days in which to comply.

On August 5, 2020, plaintiff submitted an amended complaint (Docket No. 13) and a motion for leave to proceed in forma pauperis (Docket No. 14).

### Motion for Leave to Proceed in Forma Pauperis

As noted above, plaintiff's initial motions for leave to proceed in forma pauperis were denied because plaintiff did not provide any of the required information. Specifically, she answered the questions in the form motion by stating "Private Information." In ordering plaintiff to either provide an appropriate motion or pay the filing fee, the Court noted that in forma pauperis status is a matter of privilege, not of right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). To enjoy the statute's benefits, a plaintiff has to demonstrate that, because of her poverty, she cannot pay for the litigation costs and still be able to provide for the necessities of life. *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). The determination of whether to grant or deny in forma pauperis status under § 1915 is within the sound discretion of the trial court. *Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000).

In the instant motion, plaintiff has answered the relevant financial questions. She has also signed the motion. Having reviewed the information presented by plaintiff, the Court finds that the motion for leave to proceed in forma pauperis should be granted.

### The Amended Complaint

Plaintiff's amended complaint lists sixteen separate defendants:[1] (1) Bellefontaine Neighbors Police Department; (2) Bud Feldt; (3) Jeffers; (4) Lalumanier; (5) Rea; (6) Rayford; (7)

---

[1] The Court notes that plaintiff actually lists seventeen defendants. However, Unknown Officer Bud and Bud Feldt appear to be references to the same person, and will be treated as such.

Neff; (8) Spieler; (9) Sheriff Jim Buckles; (10) Laumeier; (11) Dispatch Unit Number 6D13; (12) St. Louis County Government; (13) City of Bellefontaine Neighbors Government; (14) St. Louis County Sheriff's Office; (15) Prosecutor William Clark; and (16) Lakebrink. (Docket No. 13 at 2-5, 9-10).

Plaintiff asserts that the Court has federal question jurisdiction pursuant to Article 20 and 21 of the Treaty of Amity and Commerce of 1787 between the United States and the Moroccan Empire; 18 U.S.C. § 241;[2] and 18 U.S.C. § 242.[3] (Docket No. 13 at 6). She further states that the Court has diversity jurisdiction because she is a citizen of "Morocco, Moroccan Empire [Ancient] Amexem."

Due to the conclusory nature of the pleadings, as well as plaintiff's idiosyncratic descriptions of the defendants, such as labeling certain individuals as "policy enforcer[s]," the "Statement of Claim" can be difficult to comprehend. To the best of the Court's understanding, however, plaintiff's amended complaint arises from an incident on September 9, 2019, when plaintiff was removed from the premises at 9631 Cutler Drive by law enforcement officers pursuant to an eviction order issued by the Circuit Court of St. Louis County.[4]

---

[2] 18 U.S.C. § 241 is a criminal statute making it illegal for two or more persons to conspire to injure, oppress, threaten, or intimidate any person in the free exercise of their constitutional rights.

[3] 18 U.S.C. § 242 is a criminal statute making it illegal for a person acting under color of state law to deprive another of their constitutional rights.

[4] The underlying state court action is *St. Louis Angel Enterprises, LLC v. Davis*, No. 19SL-AC18412 (21st Jud. Cir., St. Louis County). The Court reviewed this case on Case.net, Missouri's online case management system, and takes judicial notice of this public record. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"). According to this review, St. Louis Angel Enterprises, LLC, sued plaintiff for unlawful detainer of property located at 9631 Cutler Drive in St. Louis, Missouri. The matter went to trial on August 13, 2019, and the circuit court entered judgment on August 16, 2019, in favor of St. Louis Angel Enterprises, LLC. In the judgment, the circuit court determined that plaintiff had broken into the home at 9631 Cutler Drive and occupied "the premises without a lease or occupancy permit." The circuit court issued an execution in unlawful detainer for possession of the premises. The sheriff's return notes that plaintiff was evicted on September 9, 2019, the date on which plaintiff alleges her rights were violated.

Plaintiff begins her "Statement of Claim" by alleging that on September 9, 2019, at approximately 10:58 a.m., the Bellefontaine Neighbors Police Department "failed to supervise their employees when a false, fraudulent, [fictitious] police report was issued for a stolen firearm." (Docket No. 13 at 11). She further states that the Bellefontaine Neighbors Police Department failed to prevent its employees from using its equipment to "create…said instrument, in concert with all of the other named defendant(s)." Plaintiff also asserts that Sheriff Buckles "had no [lawful] reason to knock on [her] door," and that the Bellefontaine Neighbors Police Department failed to supervise "Policy Enforcement Officer Rayford from acting in concert with a[n] unknown European" who knocked on plaintiff's door, grabbed her wrists, pulled her over the threshold, secured her wrists, and took a .38 caliber handgun from her holster. (Docket No. 13 at 12).

With regard to Bud Feldt,[5] plaintiff states that Deputy Feldt acted "in concert with the Bellefontaine Police Department [and] called in a false police report and made false statement(s)" regarding a stolen firearm. (Docket No. 13 at 12, 19). Plaintiff states that Deputy Feldt did this to give Sheriff Buckles "a lawful excuse to remove the plaintiff from her home." (Docket No. 13 at 12). She further contends that Deputy Feldt acted in concert with Judge Robert Heggie in two separate civil actions filed against her,[6] and also acted in concert with the other defendants to harm her reputation, "defame her character," physically injure her, and dispossess her of her firearms and her home. (Docket No. 13 at 12, 19).

---

[5] As noted above, in footnote 1, plaintiff has listed two different defendants named Bud. Both appear to refer to a single person, Sheriff's Deputy Bud Feldt. The Court will treat the references to Bud as pertaining to a single person.
[6] One of those cases is the aforementioned civil action regarding an unlawful detainer filed by St. Louis Angel Enterprises, LLC, concerning the premises at 9631 Cutler Drive, where the events of the amended complaint took place. *See St. Louis Angel Enterprises, LLC v. Davis*, No. 19SL-AC18412 (21st Jud. Cir., St. Louis County). The second case involved an action by The Groves Townhomes and Apartments to recover possession of the premises at 3190 O Santiago Drive in Florissant, Missouri. *See The Groves Townhomes and Apartments v. Davis*, No. 19SL-AC19388 (21st Jud. Cir., St. Louis County). A consent judgment was entered on behalf of The Groves Townhomes and Apartments by Judge Heggie on August 13, 2019.

As to defendant Jeffers, plaintiff alleges that "Policy Enforcer Jeffers did remove [her] high-point rifle from [her] home without [her] permission or consent." (Docket No. 13 at 13). This occurred on September 9, 2019 at approximately 12:00 p.m.

With regard to Lalumanier and Rea, plaintiff accuses both of trespassing on her property on September 9, 2019. Both are also alleged to have acted in concert with the other defendants "in a conspiracy to intimidate, [harass], threaten, assault, defame, libel, and slander [her]."

With regard to Rayford, plaintiff states that Rayford twisted her handcuffs, causing her pain. She further alleges that Rayford "continued to twist the cuffs and used the handcuffs to lift the plaintiff's body off the ground" in order to carry her in a "U shape to the patrol car."

Similarly, plaintiff alleges that "Policy Enforcer Neff" pushed "plaintiff's left arm up in between the plaintiff's shoulder blades[,] which forced the plaintiff forward/to bend over." (Docket No. 13 at 14). This caused "plaintiff's breasts to fall out of [her] Calvin Klein sports bra." Subsequently, Neff lifted plaintiff by her left wrist while assisting Rayford to carry her across the street to a patrol car. During this time, plaintiff states that she was in a "horseshoe position," which caused pain to her wrists, lower back, buttocks, both legs, shoulder blades, and neck. Plaintiff states that she was unable to walk after being "assaulted," and that the Bellefontaine Neighbors Police Department called an ambulance for her.

As to defendant Spieler, plaintiff states that on September 9, 2019, Spieler acted "in concert with the other defendants" to "trespass on to the plaintiff's property to intimidate, [harass], threaten, defame, libel, [and] slander [her]." Plaintiff also contends that Spieler approved of the false police report generated by Deputy Feldt.

With regard to Sheriff Buckles, plaintiff alleges that Buckles "knew he did not receive a lawful [ejectment order] from the court of Robert M. Heggie." (Docket No. 13 at 15). Plaintiff

further complains that the "Execution in Unlawful Detainer for Possession of Premises" issued by the Circuit Court did not contain Sheriff Buckles' signature and lacks a "date issued." She contends that these actions demonstrate "a conspiracy to remove the plaintiff from her property on 9-9-2019." Plaintiff also states that Sheriff Buckles' failure to supervise his employees led to numerous harms being suffered by plaintiff, including assault, slander, defamation, dispossession of her home, emotional suffering, public humiliation, and false imprisonment.

As to Laumeier, plaintiff states that Laumeier acted in concert with other defendants by approving an incident report on September 13, 2019. (Docket No. 13 at 16). Plaintiff insists that this incident report is "false, [fictitious], and fraudulent." She further asserts that Laumeier acted "in concert" with the other defendants when he approved the false police report, purportedly "to aid Robert M. Heggie [to] eject and evict the plaintiff." Additionally, she states that Judge Heggie could not lawfully evict her from the property at 9631 Cutler Drive in an "in rem jurisdiction."[7]

With regard to Dispatch Unit Number 6D13, Dispatch Patrol, plaintiff alleges that this defendant "participated in a conspiracy" to assault plaintiff and trespass on her property. (Docket No. 13 at 17). According to plaintiff, Dispatch Unit Number 6D13 became part of this conspiracy by "forwarding a false, [fictitious], fraudulent police report from Bud on 9-9-2019…to Policy Enforcer…Neff."

With regard to the St. Louis County Government, plaintiff contends that St. Louis County failed "to supervise its employees on 9-9-2019 and 9-13-2019," which "caused plaintiff to be

---

[7] In her motion for leave to proceed in forma pauperis (Docket No. 14), plaintiff states that she is in possession of the "allodial land title to 9631 Cutler Drive." This mention of allodial land title refers to a type of claim advanced by litigants who believe that the concept of allodial title can be used "to prevent foreclosure, the taking of property by eminent domain, or the acquiring of property by tax sale deeds." *Chermak v. Carter*, 2014 WL 6815797, at \*7 (W.D. Ark. 2014). However, the "concept of allodial title to land is an archaic concept not recognized in modern United States law for property ownership by individuals." *United States v. Manke*, 2012 WL 1898757, at \*6 (W.D. Mo. 2012). It is thus clear that with regard to the claims in the amended complaint, plaintiff believed she had superior title to the property at 9631 Cutler Drive, though the Circuit Court of St. Louis County ruled otherwise.

falsely accused of a felonious crime," as well as be slandered, libeled, and defamed. She further states that St. Louis County failed to prevent its "employees from creating [a] false, [fictitious], fraudulent document from a governmental entity."

Likewise, plaintiff accuses the City of Bellefontaine Neighbors Government of failing "to supervise its employees on 9-9-2019 at and around 10:58 a.m. when defendant[']s employees acted in concert to create and distribute a false, [fictitious], fraudulent police report of a stolen firearm from Bud." This led to Bellefontaine Neighbors employees coming to 9631 Cutler Drive and allegedly assaulting plaintiff by handcuffing her and carrying her in "a horse-shoe fashion."

As to Prosecutor Clark, plaintiff alleges that Clark acted in concert with the other defendants by agreeing to prosecute plaintiff based on a "false, [fictitious], fraudulent…police report." (Docket No. 13 at 18). She further states that Prosecutor Clark "used government equipment" to create and issue a false incident report.

Finally, plaintiff states that defendant Lakebrink followed her on December 3, 2019, after she had gone to the Bellefontaine Neighbors Police Department to pick up a copy of the September 9, 2019 incident report. After plaintiff arrived at the Grand Slam Storage Facility, Lakebrink allegedly came up to her window and shouted, "Now you going to the big boys jail." Meanwhile, Rayford issued plaintiff "five additional citations," which she believes is indicative of an attempted "kidnapping."

As a result of these incidents, plaintiff is seeking $200,000,000 in United States dollars or gold francs. (Docket No. 13 at 10). She also demands title to various properties, and seeks to have the "de facto government(s) shut down all operations in Missouri." Finally, she requests that the bank accounts of all defendants be frozen, and that they be criminally prosecuted.

## Jurisdiction

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). As such, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009).

Federal courts have subject matter jurisdiction over both federal question cases and diversity of citizenship cases. *See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking if neither diversity of citizenship nor federal question jurisdiction applies); *McLaurin v. Prater*, 30 F.3d 982, 984-85 (8th Cir. 1994) (noting that Congress has directed that district courts shall have jurisdiction in both federal question and diversity cases). The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). In this case, plaintiff asserts the existence of both diversity jurisdiction and federal question jurisdiction.

10

## A. **Diversity Jurisdiction**

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). With regard to the amount in controversy, a complaint making a good faith allegation of the jurisdictional amount is sufficient to confer jurisdiction. *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010). However, a "complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id. See also Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002). "The legal certainty standard is met where the legal impossibility of recovery is so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017).

With regard to diversity of the parties, "[c]omplete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Diversity jurisdiction requires that the parties be citizens of different states, not merely residents. *Sanders*, 823 F.2d at 216. For purposes of diversity, state citizenship requires an individual's physical presence in the state coupled with an indefinite intention there to remain. *Blakemore v. Missouri Pac. R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986).

Here, plaintiff has asserted damages in excess of the jurisdictional threshold. However, she has not demonstrated diversity of the parties. All of the named defendants are located in or live in Missouri. Plaintiff herself has provided a Missouri home address in filings with this Court.

11

Moreover, the substance of her amended complaint is her contention that defendants wrongfully evicted her from her "home" at 9631 Cutler Drive, Bellefontaine Neighbors, Missouri.

Despite acknowledging her home as being located in Missouri, plaintiff nevertheless asserts that she is a citizen of "Morocco, Moroccan Empire [Ancient] Amexem." However, this is not sufficient to establish diversity. That is, plaintiff provides no indication that she is actually a citizen of a foreign nation. Rather, as she makes clear in a supplemental filing, she has identified herself as a "[M]oorish [A]merican national." (Docket No. 15 at 4). Though plaintiff is attempting to confer sovereignty upon herself, the effort is unavailing. *See Allah El v. Avesta Homes, LLC*, 520 Fed. Appx. 806, 809 (11th Cir. 2013) (rejecting claim that plaintiffs' status as Moorish Nationals rendered them diverse from defendants for purposes of jurisdiction); *Bey v. United States Legislature*, 2017 WL 6611052, at *2 (S.D. N.Y. 2017) (stating that plaintiff's "purported status as a…Moorish-American does not create diversity jurisdiction where all parties are domiciled in the same state"); and *Henderson v. Phelps County Jail*, 2013 WL 5651395, at *1 (E.D. Mo. 2013) (stating that the United States has not recognized the Moorish Nation as a sovereign state).

Because plaintiff has not carried her burden of establishing diversity between the parties, the Court cannot exercise jurisdiction on this basis. As such, plaintiff must establish jurisdiction based on a federal question.

**B.  Federal Question Jurisdiction**

Federal question jurisdiction gives district courts "original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). *See also* 28 U.S.C. § 1331. Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016).

12

The well-pleaded complaint rule provides that jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017). *See also Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction").

Plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). *See also Northwest South Dakota Production Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir. 1986) (stating that "[a] non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction"). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

Plaintiff asserts several potential sources of federal question jurisdiction, to wit: Article 20 and 21 of the Treaty of Amity and Commerce of 1787; 18 U.S.C. § 241; and 18 U.S.C. § 242. None of these, however, present a proper jurisdictional basis.

With regard to the Treaty of Amity and Commerce of 1787, the Court notes that plaintiff is referring to one of the Barbary Treaties, executed in the years 1795-1836, "between the United States and [the] semi-autonomous North African city-states of Algiers, Tunis, and Tripoli, and the Sultanate of Morocco." *El Ameen Bey v. Stumpf*, 825 F. Supp.2d 537, 538 (D. N.J. 2011). These treaties were a response to rampant piracy in the waters off North Africa during the 15th to 18th centuries. *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp.2d 241, 260 n.16 (D.

13

N.J. 2011). Because of the substance of these treaties, a litigant's reliance on them "for the purposes of a civil suit raising claims based on…events that occurred within what is the United States' geographical territory is facially frivolous." *El Ameen Bey*, 825 F. Supp. 2d at 558. In other words, the Treaty of Amity and Commerce of 1787 does not give this Court federal question subject matter jurisdiction over this action. *See Knight v. Chatelain*, 2019 WL 2464789 (D. Neb. 2019). *See also Ali v. Scotia Grp. Mgmt. LLC*, 2018 WL 3729742, at \*4 (D. Ariz. 2018) (stating that no federal question jurisdiction existed for claim brought by a "Moorish American" under Treaty with Morocco); and *Wiley v. South Carolina*, 2018 WL 1998994, at \*2 (D. S.C. 2018) (same).

With regard to 18 U.S.C. § 241 and 242, neither statute provides a jurisdictional basis because neither statute gives plaintiff a private right of action. "[T]he fact that a statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Rather, like substantive federal law itself, a private right of action to enforce a federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). To that end, a criminal statute may provide an implied right of action if Congress intended to do so in enacting the statute. *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407 (8th Cir. 1999). The "ultimate issue" of this analysis is the intent of Congress, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988).

The two statutes cited by plaintiff are both criminal statues, neither of which by their terms or structure provides a private right of action. *See U.S. v. Wadena*, 152 F.3d 831, 846 (8th Cir.

14

1998) ("Courts have repeatedly held that there is no private right of action under [18 U.S.C.] §

241, even though the statute allows federal authorities to pursue criminal charges"); *Cok v.*

*Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (stating that only a United States prosecutor can bring a

complaint under 18 U.S.C. §§ 241-242, and that the "statutes do not give rise to a civil action for

damages"); *Storm-Eggink v. Gottfried*, 409 Fed. Appx. 426, 427 (2nd Cir. 2011) (stating that

"nothing in the language or structure of [18 U.S.C.] § 241 suggests that Congress intended to create

a private right of action"); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2nd Cir.

1994) (stating that 18 U.S.C. § 242 is a criminal statute that does not provide a private right of

action); *Davis v. Norwood*, 614 Fed. Appx. 602, 605 (3rd Cir. 2015) (stating "that 18 U.S.C. § 242,

which criminalizes the deprivation of rights under color of law, does not provide a private right of

action"); and *Brown v. Express Scripts*, 2018 WL 1295482, at *2 (E.D. Mo. 2018) (dismissing

plaintiff's claim brought under 18 U.S.C. § 242 because plaintiff had no private right of action).

Despite the fact that federal question jurisdiction does not rest on the foundations proposed

by plaintiff, the Court notes that in citing 18 U.S.C. § 242, plaintiff references the deprivation of

her "constitutional rights under color of law." The civil analogue of this language appears in 42

U.S.C. § 1983, which is meant "to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights." *See Johnson v. Douglas Cty. Med. Dep't*,

725 F.3d 825, 828 (8th Cir. 2013). A claim brought pursuant to 42 U.S.C. § 1983 "arises under

federal law and will support federal-question jurisdiction pursuant to § 1331." *Convent Corp. v.*

*City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015). The Court will therefore construe

plaintiff's action as arising pursuant to 42 U.S.C. § 1983, and will review it accordingly.

## Discussion

Plaintiff is a self-represented litigant who has filed a civil action that the Court has construed as arising under 42 U.S.C. § 1983. For the reasons discussed below, the case must be dismissed without prejudice for failure to state a § 1983 claim.

### A. Claims Against St. Louis County and Bellefontaine Neighbors

Plaintiff has named both St. Louis County and the City of Bellefontaine Neighbors as defendants. Local governing bodies such as St. Louis County and Bellefontaine Neighbors can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of either St. Louis County or Bellefontaine Neighbors.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007).

16

However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an

17

unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff's allegations do not support the proposition that her rights were violated due to an unconstitutional policy, custom, or failure to train on the part of either St. Louis County or Bellefontaine Neighbors. First, plaintiff has not established that either St. Louis County or Bellefontaine Neighbors had an unconstitutional policy, as her facts do not point to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by…[either] municipality's governing body." In other words, plaintiff has not shown that what allegedly happened to her on September 9, 2019 was the result of deliberate choices made by municipal officials.

Second, plaintiff has not demonstrated that her rights were violated due to an unconstitutional custom. That is, she has not demonstrated the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct" by St. Louis County or Bellefontaine Neighbors employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. To the contrary, plaintiff's allegations regard things that purportedly happened to her alone, on a single day, and do not indicate any sort of pattern whatsoever.

Finally, for the same reasons, plaintiff has failed to establish that St. Louis County or Bellefontaine Neighbors violated her constitutional rights due to a failure to train or supervise its employees. Specifically, she has not alleged a "pattern of similar constitutional violations by untrained employees." Rather than a pattern, her facts center on a single incident occurring on a single day.

18

Based on some of plaintiff's statements regarding St. Louis County and Bellefontaine Neighbors, it appears that plaintiff is attempting to premise liability solely on the fact that these governing bodies employed the individual defendants. Under 42 U.S.C. § 1983, however, a governmental entity cannot be held liable solely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

Plaintiff has failed to state a municipal liability claim against either St. Louis County or Bellefontaine Neighbors because she has not presented facts demonstrating that the alleged violation of her constitutional rights was due to an unconstitutional policy, custom, or failure to train. Therefore, the claims against both St. Louis County and Bellefontaine Neighbors must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## B. Claims Against the Bellefontaine Neighbors Police Department and the St. Louis County Sheriff's Office

Plaintiff has named both the Bellefontaine Neighbors Police Department and the St. Louis County Sheriff's Office as defendants. Both claims fail, however, because neither is a juridical entity, suable as such. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that West Memphis Police Department and West Memphis Paramedic Services were "simply departments or subdivisions of the City government," and not suable entities); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Even if the City of Bellefontaine Neighbors and St. Louis County were

19

substituted as proper party defendants, plaintiff has failed to state municipal liability claims against them, as discussed above. Therefore, plaintiff's claims against the Bellefontaine Neighbors Police Department and the St. Louis County Sheriff's Office must be dismissed.

### C. Claims Against Feldt, Jeffers, Lalumanier, Rea, Rayford, Neff, Spieler, Buckles, Laumeier, Dispatch Unit Number 6D13, Clark, and Lakebrink

As discussed above, the Court has construed plaintiff's amended complaint as arising under 42 U.S.C. § 1983. A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id. See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims").

With regard to the twelve individual defendants listed in the action, plaintiff has failed to indicate the capacity in which they are sued. Accordingly, as discussed above, the Court must assume these defendants are sued in their official capacities only.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public

20

employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, the twelve individual defendants are employed by either St. Louis County or Bellefontaine Neighbors. As explained above, the official capacity claims against these defendants are actually claims against the governmental entities that employ them. However, as previously discussed, plaintiff has failed to state a municipal liability claim against either St. Louis County or Bellefontaine Neighbors. Therefore, the official capacity claims against Feldt, Jeffers, Lalumanier, Rea, Rayford, Neff, Spieler, Buckles, Dispatch Number 6D13, Clark, and Lakebrink, which are the only claims against them, must be dismissed.

### D. Individual Capacity Claims

As discussed above, plaintiff has not indicated the capacity in which she is suing the individual defendants. Therefore, the Court must assume that she has sued defendants Feldt, Jeffers, Lalumanier, Rea, Rayford, Neff, Spieler, Buckles, Dispatch Number 6D13, Clark, and Lakebrink in their official capacities only. Such official capacity claims are treated as claims against the respective governmental employers of each defendant. Because plaintiff has not adequately stated municipal liability claims against either St. Louis County or Bellefontaine Neighbors, the official capacity claims against these defendants must be dismissed. Nevertheless, even if the Court were to assume that plaintiff had sued defendants Feldt, Jeffers, Lalumanier, Rea,

21

Rayford, Neff, Spieler, Buckles, Dispatch Number 6D13, Clark, and Lakebrink in their individual capacities, she has still not stated a claim against them.

### i.    Deputy Feldt

Plaintiff accuses Deputy Feldt of making what she refers to as a "false, [fictitious], fraudulent police report," and of working in concert with other defendants to cause her harm. There is no indication as to what made Deputy Feldt's report false, fictitious, or fraudulent, and there is absolutely no support for plaintiff's contention that Deputy Feldt acted in concert with anyone to harm her. Rather than provide any factual support for her assertions, plaintiff relies on conclusory declarations, expecting the Court to assume that her conclusions are true. The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). Moreover, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." Here, plaintiff's conclusory allegations against Deputy Feldt do not raise her right to relief above the level of speculation. Therefore, even if Deputy Feldt had been sued in his individual capacity, the claim against him would be subject to dismissal.

### ii.    Jeffers

The sole allegation against "Policy Enforcer Jeffers" is that Jeffers removed a high-point rifle from plaintiff's home without her "permission or consent." "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). A plaintiff bringing a § 1983 action must include in his complaint "either direct or inferential

allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015).

Here, plaintiff's statement that Jeffers took a rifle from her home, without more, fails to demonstrate the violation of one of plaintiff's constitutional rights. Therefore, even if Jeffers had been sued in an individual capacity, the claim against him would be subject to dismissal.

### iii.     Lalumanier and Rea

Plaintiff states that both Lalumanier and Rea trespassed on her property. Furthermore, she suggests that both Lalumanier and Rea were acting as part of a conspiracy to harm her. With regard to the trespassing allegation, plaintiff provides no indication that Lalumanier and Rea violated her constitutional rights, which is required to support a 42 U.S.C. § 1983 claim. *See Zutz*, 601 F.3d at 848 (stating that a plaintiff in a § 1983 claim must show that defendant's "wrongful conduct deprived the plaintiff of a constitutionally protected federal right"). Moreover, the contention that Lalumanier and Rea acted as part of a conspiracy or in concert with each other is an unsupported conclusion, not entitled to the presumption of truth. *See Torti*, 868 F.3d at 671 ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Therefore, even if Lalumanier and Ray had been sued in their individual capacities, the claims against them would be subject to dismissal.

### iv.     Rayford and Neff

Plaintiff alleges that Rayford twisted her handcuffs, causing her pain, and also used the handcuffs to help carry her to the patrol car. Similarly, plaintiff states that Neff, while apparently handcuffing her, pushed her left arm up, which forced plaintiff forward, causing her breasts to be exposed. She also asserts that Neff, along with Rayford and another "policy enforcer," carried her

to the patrol car. In short, plaintiff is alleging that Rayford and Neff used excessive force against her.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018). "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019). To that end, law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "A de minimis use of force is insufficient to support a claim, and it

may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minims use of force." *Robinson*, 937 F.3d at 1136.

In this case, plaintiff's allegations do not support an excessive force claim under the Fourth Amendment. To begin, plaintiff's claim of force revolves around her being handcuffed by law enforcement. Specifically, she states that she experienced pain when Rayford twisted her handcuffs. Handcuffing, however, almost by definition, requires the use of force, and plaintiff has not established that this particular use of force was excessive. *See Chambers*, 641 F.3d at 907 (citations omitted) ("Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied. To prove that the force applied was excessive in that context, therefore, a plaintiff must demonstrate something more").

More importantly, plaintiff has not demonstrated that being placed in handcuffs or being carried to a patrol car was unreasonable under the circumstances. As noted above, the determination as to whether force was excessive turns on reasonableness. Relevant factors include whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest. Plaintiff does not provide any facts indicating that she was cooperating with officers or complying with orders. Likewise, she presents no facts showing that Rayford and Neff were acting without cause. She further acknowledges having a handgun on her person, and another firearm in her house.

There is nothing in the amended complaint from which the Court can infer that plaintiff was being compliant with officers. Indeed, the substance of her amended complaint suggests otherwise, as plaintiff repeatedly states that law enforcement came to her house based on a "false" report in order to carry out a court order she believed to be invalid. Without any indication as to

25

plaintiff's actions in relation to the law enforcement officers, plaintiff has not established that the force used against her was unreasonable and thereby excessive. Therefore, even if Rayford and Neff had been sued in their individual capacities, the claims against them would be subject to dismissal.

### v.    Spieler

Plaintiff states that Spieler trespassed on her property and approved a false police report. With regard to the trespassing allegation, plaintiff has not demonstrated that Spieler violated one of her federal rights. *See Beeks v. Hundley*, 34 F.3d 658, 661 (8th Cir. 1994) (stating that "the central purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors"). As to the accusation that Spieler approved a false police report, plaintiff provides no factual support for this conclusion, or any other indication as to why she believes the report to be false. This vague style of pleading does not suffice to state a claim. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do… Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement"). Therefore, even if Spieler had been sued in his individual capacity, the claim against him would be subject to dismissal.

### vi.    Sheriff Buckles

Plaintiff asserts that Sheriff Buckles knew he did not receive a lawful ejectment order from Judge Heggie, failed to supervise his employees, and acted as a part of a conspiracy to remove plaintiff from her home on September 9, 2019.

In order to state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. That is, the complaint must contain enough factual allegations to raise a right to relief above the speculative level. *Bell*

26

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Torti*, 868 F.3d at 671 ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). "While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8ᵗʰ Cir. 2002). Moreover, "[t]he essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8ᵗʰ Cir. 2014).

Here, plaintiff's amended complaint does not contain sufficient factual allegations against Sheriff Buckles to raise a right to relief above the speculative level. Instead, plaintiff either relies on unsupported conclusions, such as her contention that Judge Heggie's ejectment order was unlawful, or on the recitation of causes of action, such as her assertions that Sheriff Buckles failed to supervise his employees and engaged in a conspiracy. The Court is free to ignore such pleadings. Moreover, nowhere in the "Statement of Claim" is there any explanation as to what Sheriff Buckles actually did or did not do to violate plaintiff's rights. Therefore, even if Sheriff Buckles had been sued in his individual capacity, the claim against him would be subject to dismissal.

### vii.   Laumeier

Plaintiff states that Laumeier acted in concert with other defendants to approve a "false" police report to "aid [Judge] Robert M. Heggie" in evicting plaintiff, and further acted in concert with other defendants to approve a "false" incident report on September 13, 2019. As with the allegations against other of the defendants, plaintiff's assertions regarding Laumeier consist of

nothing more than her labels and conclusions regarding events, without any factual enhancement to actually establish what took place. This is not adequate to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that to state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice"). As such, even if Laumeier had been sued in his individual capacity, the claim against him would be subject to dismissal.

### viii.   Dispatch Unit Number 6D13

Plaintiff asserts that a law enforcement officer identified only as Dispatch Unit Number 6D13 knowingly participated in a conspiracy against her by "forwarding a false, [fictitious], fraudulent police report from" Deputy Feldt. She does not offer any further factual support for the conclusions that she has drawn. This fails to state a claim. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). Therefore, even if Dispatch Unit Number 6D13 had been named in an individual capacity, the claim would be subject to dismissal.

### ix.   Prosecutor Clark

Plaintiff states that Prosecutor Clark acted in concert with other defendants in agreeing to prosecute her. Prosecutors are immune from § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution. *Id*. On the other hand, a prosecutor is

28

entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence").

Here, any decision made by Prosecutor Clark with regard to the filing of criminal charges against plaintiff is protected by absolute immunity. This immunity is not defeated by allegations of malice or vindictiveness, or by claims that the actions are patently improper.

Even if Prosecutor Clark were not immune, plaintiff's claims against him fail because they are entirely conclusory, relying on unsupported labels and statements to the effect that Clark acted as part of a conspiracy or used government equipment to create a "false incident report." While

the Court is required to accept factual allegations as true, it is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *See Wiles*, 280 F.3d at 870. Therefore, even if Prosecutor Clark had been sued in an individual capacity, the claim against him would be subject to dismissal.

**x.**      **Lakebrink**

Plaintiff alleges that following the incident on September 9, 2019, Lakebrink confronted her outside of the Grand Slam Storage Facility and told her that "Now you going to the big boys jail." To the extent that plaintiff appears to be accusing Lakebrink of issuing a threat, the claim must fail. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). *See also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). Therefore, even if Lakebrink had been sued in an individual capacity, the claim against him would be subject to dismissal.

**E.  Summary Dismissal**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. In this case, the Court has construed plaintiff's amended complaint as being brought pursuant to 42 U.S.C. § 1983. However, plaintiff has failed to state a § 1983 claim. In particular, her municipal liability claims against St. Louis County and Bellefontaine Neighbors fail because she has not demonstrated that her rights were violated by an unconstitutional policy, custom, or failure to train on the part of either governing body. Likewise, her claims against the Bellefontaine Neighbors

30

Police Department and St. Louis County Sheriff's Office fail because neither is a suable entity. With regard to the individual defendants, plaintiff has not stated the capacity in which they are sued. Thus, the claims against them must be treated as official capacity claims only. Such official capacity claims are actually against the governmental entities employing the defendants. As previously noted, though, plaintiff has not adequately pleaded the liability of either St. Louis County or Bellefontaine Neighbors. Finally, even if the Court assumed that plaintiff was suing these defendants in their individual capacities, she has still failed to state a claim upon which relief can be granted. Therefore, the amended complaint must be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this  21st day of October, 2020.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

31